IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| DAVE OLEKSIAK, | ) | CASE NO.1:19-CV-01555 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

Before me[1] is an action by Dave Oleksiak under 42 U.S.C. §405(g) seeking judicial review of the July 24, 2018 decision of the Commissioner of Social Security that denied Oleksiak's 2016 application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Under terms of my initial[5] and procedural[6] orders, the parties have briefed their positions,[7] filed supplemental

---

[1] The parties have consented to my exercise of jurisdiction and the matter was then transferred to me by United States District Judge John R. Adams. ECF No. 15.
[2] ECF No. 1.
[3] ECF No. 8.
[4] ECF No. 9.
[5] ECF No. 5.
[6] ECF No. 11.
[7] ECF Nos. 13 (Oleksiak), 17 (Commissioner).

1

fact sheets,[8] met and conferred as to potentially reducing the matters at issue[9] and participated in a telephonic oral argument.[10]

For the reasons set forth below, the decision of the Commissioner will be affirmed.

**I.**

Oleksiak, age 49,[11] completed three years of college[12] and previously worked as a construction worker, which was determined to be heavy, semi-skilled work.[13] The ALJ found that Oleksiak had the following severe impairments: osteoarthritis and allied disorders, hypertension, hyperlipidemia, diabetes mellitus and obesity.[14]

That said, the ALJ further found that none of the severe impairments met or medically equaled a listing.[15] In that regard, the ALJ noted that there was no medical evidence that showed an inability to ambulate effectively or an inability to perform fine and gross motor movements.[16]

The ALJ specifically noted that although Oleksiak's "impairments cause significant physical limitations," the record does not contain any statements from an accepted medical source indicating that Oleksiak needs an assistive device to ambulate nor is there any such

---

[8] ECF Nos. 12 (Oleksiak), 17, Attachment (Commissioner).
[9] ECF No. 18.
[10] ECF No. 20.
[11] Tr. at 27.
[12] *Id*. at 41.
[13] *Id*. at 26.
[14] *Id*. at 18.
[15] *Id*. at 19, 20.
[16] *Id.*

evidence that Oleksiak is unable to take care of personal hygiene, prepare meals, or handle paperwork.[17] Moreover, the ALJ observed that no medical evidence exists to show that Oleksiak's diabetes has resulted in "extreme complications."[18]

The ALJ then concluded that Oleksiak had an RFC to perform light work with some additional restrictions.[19] The VE testified that there were three jobs available for someone with Oleksiak's RFC.[20] Consequently, Oleksiak was found not disabled.[21]

## II.

Here, Oleksiak claims that the ALJ erred in his analysis of the disabling effects of Oleksiak's pain.[22] Oleksiak concedes that the ALJ did "to some extent" recognize the existence of objective evidence, such as x-rays, that support Oleksiak's complaints of pain, but he further argues that the ALJ's ultimate decision to minimize the severity of Oleksiak's pain was improperly based on an incorrect perception of the clinical evidence and an improper conclusion that Oleksiak's condition had improved following surgery.[23]

Specifically, Oleksiak contends that "all the treating doctors, including the specialists, documented significant pain"[24] Further, he states that "[e]vidence of pain also exists by reviewing the multiple medications [he] was prescribed," and in his "willingness

---

[17] *Id.* at 20.
[18] *Id.*
[19] *Id.*
[20] *Id.* at 27.
[21] *Id.* at 28.
[22] ECF No. 13 at 13.
[23] *Id.* at 14.
[24] *Id.* at 15.

3

to undergo invasive and painful procedures" on his fingers and hips.[25] He now claims this evidence was either minimized or ignored by the ALJ.[26]

In that same vein, he asserts that the ALJ mischaracterized the period of January to July 2009 when Oleksiak was experiencing "flares" of inflammatory arthritis, interspersed with "urgent" visits to a rheumatologist for steroid treatments.[27] Oleksiak states that even the infrequent flares of arthritis nevertheless disabled him completely from the pain.[28] Similarly, Oleksiak points to treatment notes regarding his right hip that show greater loss of mobility than the ALJ acknowledged and note that Oleksiak was experiencing "significant pain."[29]

If this pain was properly accounted for, Oleksiak contends that he would not be able to work for one day per month.[30] Such a rate of absenteeism would, in the testimony of the VE, make him unemployable.[31]

Finally, Oleksiak maintains that he cannot perform the standing, walking and handling requirements of the RFC.[32] He contends that the ALJ here erred by giving too much weight to the "temporary" improvement in function that occurred after hip surgery

---

[25] *Id.* at 16.
[26] *Id.*
[27] *Id.* at 17.
[28] *Id.*
[29] *Id.* at 18.
[30] *Id.*
[31] *Id.*
[32] *Id.* at 20.

in June 2010.[33] He also argues that the ALJ improperly relied on the functional opinions of non-examining, non-treating sources that did not evaluate "evidence from prior to the date last insured and all evidence of pain."[34]

During the telephonic oral argument, Oleksiak primarily emphasized his position as a challenge to the RFC's findings that he was capable of standing and walking for 6 hours per work day, that he could frequently handle. He contends that he should have been found to be capable of only sedentary work, with only occasional handling and at least one day's absence from work per month.

### III.

This matter presents questions properly analyzed under the long-standing substantial evidence rubric, as well as the standard for reviewing credibility findings I first articulated in the frequently-cited case of *Cross v. Commissioner*.[35] I will first address the analysis of Oleksiak's claims of disabling pain since that determination will materially affect the issue of whether substantial evidence supports the RFC finding.

*Credibility finding* The ALJ's finding as to a claimant's credibility as to pain is entitled to deference and should not be disturbed absent a compelling reason.[36]

---

[33] *Id.* at 21.
[34] *Id.*
[35] 373 F.Supp.2d 724 (N.D. Ohio 2005).
[36] *Id*. at 732 (citations omitted).

The regulations set forth factors to be considered in assessing credibility. These include the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; and the treatment or measures, other than medication, taken to relieve pain; and other factors concerning functional limitations and restrictions due to pain or other symptoms.[37]

As I noted in *Cross*, as a practical matter, the weight of the objective medical evidence remains an important consideration, such that where the objective medical evidence does not support a finding of disability, at least an informal presumption of no disability should arise, to be overcome by the claimant.[38] If the claimant present credible evidence to support his claim of disabling pain, that evidence may support the imposition of work-related limitations beyond those dictated by objective medical evidence.[39] However, the discretion afforded by a reviewing court to an ALJ's credibility finding is "extremely broad."[40]

As to the level of articulation required, an ALJ should explain, in terms of the regulation, why the claimant's allegation is not credible.[41] In doing so, the ALJ need not expressly analyze all the factors identified in the regulation but should provide enough of an assessment to assure the reviewing court that he or she has considered all relevant

---

[37] 20 C.F.R. § 404.1529 (c); *Cross*, 373 F.Supp.2d at 732.
[38] *Cross*, 373 F.2d at 732.
[39] *Id*.
[40] *Id*.
[41] *Id*. at 733.

evidence.[42] That assessment should not be conclusory and should be specific enough to permit the reviewing court to trace the analytical path of the ALJ's reasoning.[43]

Initially, the ALJ here did review the objective medical evidence, concluding that although such evidence demonstrated Oleksiak had "significant impairments," it did not conclusively show Oleksiak's impairments precluded him from having a capacity for light work.[44] Indeed, Oleksiak appears to acknowledge that the ALJ reviewed the relevant evidence, but argues that he misconstrued it, minimized it or failed to evaluate if in light of his pain. Oleksiak, however, does not argue that the objective evidence standing alone conclusively establishes disability.

In fact, as the Commissioner points out, the ALJ noted those occasions where particularly severe hand and finger symptoms were either controlled or reduced by medication[45] or surgery.[46] As to his hips, again the ALJ took note of both Oleksiak's degenerative arthritis and normal physical findings such as gait, and motor and sensory functioning.[47] Further, the ALJ documented that after imaging showed Oleksiak with end-stage arthritis, he underwent hip resurfacing surgery that resulted in a stable right hip, minimal swelling, no "major complaints" and excellent range of motion in the hip.[48]

---

[42] *Id.*
[43] *Id.*
[44] Tr. at 18-26.
[45] *Id.* at 22.
[46] *Id.* at 23.
[47] *Id.* at 22, 23, 24.
[48] *Id.* at 24.

In addition, the ALJ took note or, and gave great weight to, the only two medical opinions in the record,[49] both of which stated that Oleksiak was physically capable, *inter alia*, of standing, walking, and/or sitting for six hours in an eight-hour workday and engaging in limited handling with both hands.[50]

The ALJ extensively discussed on the record Oleksiak's impairments, their symptoms, the treatments and the remaining functional limitations in arriving at the conclusion, noted above, that while there is objective evidence of severe impairments, the severity of any resulting symptoms were essentially resolved or reduced with surgery or medication.[51]

No "compelling reason" to overturn the ALJ's finding regarding the disabling effect of Oleksiak's pain.

***Residual functional capacity finding*** As was discussed above, there was no error in the determination of credibility as to the effects of pain. Further, as also discussed above, the objective evidence plus the two state agency reviewing source opinions are otherwise consistent with the RFC. In particular, apart from Oleksiak's own testimony, there is no

---

[49] Although Oleksiak objects to the weight given on the grounds that the state agency reviewing physicians were not treating or examining sources and also did not have the ability to review the whole record, the Commissioner correctly notes that an ALJ may rely on such opinions where, as here, the ALJ has himself reviewed the entire record. *Jenkins v. Comm'r of Social Security*, 2017 WL 1093759, at * 7 (N.D. Ohio Mar. 23, 2017).
[50] Tr. at 71-73, 83-85.
[51] *Id*. at 22.

opinion evidence supporting the more limited RFC he now seeks, and nothing in the objective evidence that would compel a change in the RFC.

As the Commissioner notes, the substantial evidence standard states that if substantial evidence exists to support the Commissioner's decision – as was set forth above – then the reviewing court will affirm that decision even though the claimant may point to other evidence in the record that would have supported a different conclusion.

**IV.**

For the reasons stated, the decision of the Commissioner is hereby affirmed.

IT IS SO ORDERED.

Dated: April 14, 2020                                           s/William H. Baughman Jr.
                                                                                      United States Magistrate Judge